UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ELIOT PAUL GOULD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10-3265 |
| | ) |
| BYRON A. SCHNEIDER, in his | ) |
| capacity as Chairman of the Illinois | ) |
| State Board of Elections. | ) |
| | ) |
| Defendant. | ) |

### ORDER

On January 19, 2011, a Report & Recommendation [#19] was filed by Magistrate Judge Byron G. Cudmore in the above-captioned case, recommending that Defendant's Motion to Dismiss [#12] be allowed. Both parties have filed Objections [#21, 22] to the Magistrate Judge's recommendation. Defendant has filed a Response [#24] to Plaintiff's Objection. This Order follows.

### STANDARD OF REVIEW

A district court reviews *de novo* any portion of a Magistrate Judge's Report and Recommendation to which written objections have been made. *See* FED. R. CIV. P. 72(b). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*.

### BACKGROUND

On October 14, 2010, Plaintiff Eliot Paul Gould ("Gould"), filed a *pro se* Complaint against Defendant Byron A. Schneider ("Schneider"), in his capacity as Chairman of the Illinois State Board of Elections. In his Complaint, Gould takes issue with the nomination process provided in Illinois

statutes regarding the selection of candidates for the United States Senate. He specifically alleges that "The section of Illinois statutes that provide for 'citizen challenges' are as confederate as an oath by Jim Crow." Complaint at 2. He further alleges that Illinois' Election Code violates the federal Constitution's Seventeenth and Twenty-Fourth Amendments, the State Board arbitrarily picks which statutes it must observe, and the State employs practices and procedures which allow abuse inconsistent with proper federal elections. In a separately filed "Statement as to Special Notifications," Gould alleges that a provision of the Voting Rights Act, 42 U.S.C. § 1973aa, has been violated by Illinois election law. Gould did not name Justice Thomas L. Kilbride ("Justice Kilbride"), Chief Justice of the Illinois Supreme Court, nor Michael Scodro ("Scodro"), Solicitor General of the Office of the Attorney General of the State of Illinois, as defendants, but he caused summons to be issued on them.[1] Kilbride and Scodro filed a Motion to Quash the return of service of summons upon them, arguing that Gould's method of service was not authorized by the Federal Rules of Civil Procedure or state law.

In the Report & Recommendation filed by the Magistrate Judge, he recommends that Defendant Schneider's Motion to Dismiss be allowed and Gould's Complaint dismissed with prejudice. Magistrate Judge Cudmore further recommends that the pending Motion to Quash by Justice Kilbride and Scodro be denied as moot.

## ANALYSIS

**I.  Defendant Schneider's Objection**

---

[1] Gould actually caused summons to be issued to "Thomas L. Kincade," a nonexistent person.

Defendant Schneider objects to the portion of the Magistrate Judge's recommendation that Gould should be found to have standing to bring his Complaint. Schneider takes issue with that recommendation on the bases that Gould has not sufficiently alleged facts to show he has standing as a taxpayer nor as a citizen. Schneider further contends that while a *pro se* party's complaint must be read liberally, there is no authority that supports the proposition that standing to sue is broader for *pro se* plaintiffs than it is for other litigants.

Schneider's Objection to the finding of standing highlights how Gould's Complaint apparently lacks enough allegations to confer standing on him as a taxpayer and citizen. The level of pleading that Schneider believes Gould has failed to reach verges on that required of a litigant represented by counsel. However, Schneider does correctly argue that, even construing the Complaint liberally, Gould has failed to allege facts that would confer standing upon him as a taxpayer. Gould's brief and sole allegation related to state spending is that "more than an 'iota' of state expense is made upon the candidates subject to removal." Complaint at 4. He otherwise complains of how Illinois' election laws allegedly work to exclude certain candidates from the ballot in violation of the federal Constitution. Gould's status as an Illinois and United States taxpayer and his claim that Illinois' allowance of citizen challenges is unconstitutional lack the "logical nexus" necessary to find he has standing as a taxpayer to bring that claim. *Flast v. Cohen*, 392 U.S. 83, 102 (1968) (holding that the nexus requires that the taxpayer establish a link between taxpayer status and the legislation attacked, and that the taxpayer must also establish a nexus between taxpayer status and the precise nature of the alleged constitutional infringement).

3

While it is extremely close, Gould has made sufficient allegations to bring the claim that his right to vote has been burdened by 10 ILCS 5/10-8.[2] Indeed, he has not explicitly stated that he is an Illinois voter, but has stated that he is a United States citizen, inhabitant of Illinois, and a taxpayer in Illinois and the United States. His allegations pertain to the way in which he believes § 5/10-8 violates the Constitution and ultimately has the affect of changing the results of elections by removing certain candidates from the ballot. *See Baker v. Carr*, 369 U.S. 186, 206 (1962) (citing *Colegrove v. Green*, 328 U.S. 549 (1946)) (noting that voters who allege facts that show disadvantage to themselves as individuals have standing to sue); *Lee v. Keith*, 463 F.3d 763, 768 (7th Cir. 2006) (explaining that plaintiff's challenge to the constitutionality of state ballot access laws would be determined on the basis of the laws' effect on plaintiff's political association rights as a voter and candidate). Such pleadings, read liberally, provide that Gould is challenging an Illinois election law that is burdening his rights as a voter. *See McCormick v. City of Chicago,* 230 F.3d 319, 325 (7th Cir. 2000) (well settled Seventh Circuit law provides that *pro se* complaints are to be

---

[2] Section 5/10-8 provides in relevant part:

> Certificates of nomination and nomination papers . . . being filed as required by this Code, and being in apparent conformity with the provisions of this Act, shall be deemed to be valid unless objection thereto is duly made in writing within 5 business days after the last day for filing the certificate of nomination or nomination papers or petition for a public question, with the following exceptions: . . .
>
> Any legal voter of the political subdivision or district in which the candidate . . . is to be voted on, . . . shall file an objector's petition together with a copy thereof in the principal office or the permanent branch office of the State Board of Elections, or in the office of the election authority or local election official with whom the certificate of nomination, nomination papers or petitions are on file.

10 ILL. COMP. STAT.5/10-8 (2011).

liberally construed). The Court therefore concurs with the Magistrate Judge's recommendation that Gould has standing to bring his claims that his right to vote is burdened by § 5/10-8.

## II.    Plaintiff Gould's Objection

Gould objects to the Magistrate Judge's recommendations that his claims be dismissed for failure to state a claim where § 5/10-8 does not cause the constitutional violations alleged by Gould, and does not violate § 2 of the Voting Rights Act. Gould again strenuously argues that the 25,000 signatures required for would-be candidates to appear on the ballot for Unites States Senator in Illinois is an additional qualification not enumerated in the Constitution. He further argues that the ability of citizens to challenge the validity of those signatures and petitions under § 5/10-8[3] is a "faux law" and is abused in a way to "contour the ballot." Response, Docket Entry 21, at 13, 14. Defendant Schneider responds to Gould's objection that the Supreme Court has expressly upheld petition requirements for placement on a ballot.

Ultimately, while Gould may have a disagreement with the 25,000-signature requirement for would-be candidates and disagreement with the process employed to test the validity of those 25,000 signatures, § 5/10-8 does not violate the Constitution. As the Magistrate Judge explained, the Seventh Circuit has determined that the 25,000-signature figure is constitutional as a reasonable requirement for access to the ballot. *Nader v. Keith*, 385 F.3d 729, 733 (7th Cir. 2004). The Court concurs with the Magistrate Judge's determination that § 5/10-8 imposes no greater burden on candidates than those imposed by § 5/10-3.[4] If a state can require some preliminary showing of a

---

[3] Gould calls this ability under § 5/10-8 a "citizen challenge."

[4] 10 ILL. COMP. STAT. 5/10-3 sets forth the 25,000-signature requirement and other requirements for nomination papers submitted by independent candidates for any office to be filled by the voters of the State of Illinois.

5

certain amount of support before a candidate's name will make it onto a ballot, then it follows that the state can implement processes for citizens to challenge whether that "support" is valid. *See Jenness v. Fortson*, 403 U.S. 431, 442 (1970) (explaining that there is "an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot" where the plaintiff challenged a Georgia election code provision pertaining to nonparty candidate nominating petitions). Gould erroneously argues that the process involved in a citizen challenge, including the ability of a would-be candidate to challenge the removal of his or her name from the ballot through an appeal, violates the would-be candidate's due process and equal protection rights. In fact, the ability of those would-be candidates to appeal an adverse decision provides them due process and reduces the risk that they have been removed from the ballot in violation of their equal protection rights. The 25,000-signature requirement is not a "series of burdens" as Gould alleges. Response, Docket Entry 21, at 19. If the would-be candidate receives the requisite number of valid signatures, no more is required of that person. The Court also concurs with the Magistrate Judge's conclusion that § 5/10-8 does not violate the Twenty-Fourth Amendment because § 5/10-8 does not impose a tax on Illinois voters or anyone else.

Gould's objection to the Magistrate Judge's recommendation that he fails to state a claim that § 5/10-8 violates § 2 of The Voting Rights Act is that the Magistrate Judge considered the wrong section of the Voting Rights Act. The Magistrate Judge determined that § 5/10-8 does not violate § 2 of the Voting Rights Act because it does not stop anyone from voting, but rather allows citizens to challenge whether a candidate has complied with the Illinois laws that provide for placement on the ballot. *See* 42 U.S.C. § 1973(a) (stating that no voting qualification or prerequisite to voting

6

shall be imposed which would have the effect of denying or abridging a citizen's right to vote on account of race or color). Gould states that § 5/10-8 violates 42 U.S.C. § 1973aa, which provides:

> (a) No citizen shall be denied, because of his failure to comply with any test or device, the right to vote in any Federal, State, or local election conducted in any State or political subdivision of a State.
>
> (b) As used in this section, the term "test or device" means any requirement that a person as a prerequisite for voting or registration for voting (1) demonstrate the ability to read, write, understand, or interpret any matter, (2) demonstrate any educational achievement or his knowledge of any particular subject, (3) possess good moral character, or (4) prove his qualifications by the voucher of registered voters or members of any other class.

42 U.S.C. § 1973aa. Gould highlights § 1973aa(b)(4) as the portion relevant to his claim that § 5/10-8 violates the Voting Rights Act. It is far from clear as to whether Gould highlights that portion of the Act to support his argument that the 25,000-signature requirement is an unconstitutional additional requirement imposed upon would-be senatorial candidates, or to support his argument that § 5/10-8 violates the Act. It is clear, however, that Gould is attempting to set forth allegations under 42 U.S.C. § 1973aa that he did not set forth in his Complaint. The Magistrate Judge was generous in his consideration of Gould's newly presented allegations involving the Voting Rights Act, including that four of five African Americans were kept off the ballot by way of § 5/10-8.

In his Response to Gould's objection to the Magistrate Judge's treatment of his claim under § 2 of the Voting Rights Act, Schneider explains that the cases in which the Supreme Court found a problem under § 2 involved legislative redistricting that had the effect of diluting minority citizens' votes. *See Thornburg v. Gingles*, 478 U.S. 30, 34-35 (1986) (plaintiffs, black citizen voters of North Carolina, brought action challenging legislative redistricting plan that they alleged impaired

their ability to elect representatives of their choice in violation of the Constitution and § 2 of the Voting Rights Act); *Reynolds v. Sims*, 377 U.S. 533, 568 (1964) (holding that the Equal Protection Clause requires that the seats in a state bicameral legislature must be apportioned on a population basis and further stating that an individual's right to vote for state legislators is unconstitutionally impaired when its weight is diluted as compared to votes of other citizens in other parts of the state). Schneider argues that because Gould has not alleged that the voting power of African Americans has been diluted by the availability of citizen challenges in Illinois, Gould's claim must fail. Indeed, the cases to which Gould cites in support of his Voting Rights Act argument are distinguishable on the basis that those cases all involved the fact that the voting power of individuals had been diluted as a result of legislative redistricting. *Thornburg*, 478 U.S. at 80; *Reynolds*, 377 U.S. at 575.

Even if Gould had included his allegations in support of his argument under § 1973aa in his Complaint, he would still fail to state a claim because that section deals with the denial of the right to vote, not the right to be a candidate on the ballot. Gould's arguments make clear that he challenges § 5/10-8 to the extent it prevents certain would-be candidates from placement on the ballot, but does not allege that § 5/10-8 or the 25,000-signature requirement denies those candidates of their right to vote. Furthermore, as discussed above, the Seventh Circuit has upheld the 25,000-signature requirement as constitutional. *Nader*, 385 F.3d at 733. Accordingly, the Court concurs with the Magistrate Judge's conclusion that § 5/10-8 does not violate § 2 of the Voting Rights Act, and the Court further finds that Gould has failed to state a claim based upon 42 U.S.C. § 1973aa. The Court additionally concurs with the Magistrate Judge's conclusion that to the extent that Gould's use of the word "preempted" was not an error, the Complaint fails to state a claim for preemption.

**III.    Gould's Motion on the Question of Respondent's Necessity for Separation of Powers**

On February 23, 2011, over one month after the Magistrate Judge issued his Report & Recommendation, and nearly three weeks after Gould filed his Objection to that Report & Recommendation, Gould filed a motion entitled "Motion on the Question of Respondents' Necessity for Separation of Powers" [#26]. In the Motion, Gould notes the three different branches of government of the State of Illinois, and identifies sections of the 1970 Illinois Constitution which set forth the State Board of Elections' powers and membership and the separation of powers between the three branches of Illinois government. Gould requests that the Court "take notice for correction of the 'separation of powers required under the state constitution and provide for authority (by signatures) of each Respondents [sic] as each are 'independent officers' and cannot be fused." Docket Entry 26 at 2. Defendant Schneider immediately filed a Response to Gould's Motion on February 24, 2011, stating that Schneider has no idea what Gould is asking the Court to do. Schneider did proceed to argue that Gould's motion must be denied because there is no violation of the separation of powers clause and the Court otherwise lacks authority to decide the issue under the Eleventh Amendment. Schneider further argues that Gould's Motion is frivolous and fails to comply with Local Rules.

Just as Schneider stated, the Court is not entirely sure as to what Gould is attempting to do with this most recent Motion, but it appears he is attempting to add a new claim. The problem with that attempt is twofold. First, under Federal Rule of Civil Procedure 15, the time for Gould to amend his Complaint as a matter of course has long since passed, Defendant Schneider has not given his consent to any amendment Gould may be seeking to make, and the Court will not grant leave to Gould to amend his pleading to include this new claim. *See* FED. R. CIV. P. 15 (setting forth the

timeline in which a party may amend its pleading as a matter of course, and the way in which it may make amendments under different circumstances). The second reason the Court refuses to grant Gould leave to amend his Complaint to include this apparent new claim is that even with the most liberal reading of this Motion, this pleading fails to comply with the minimal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Rule 8 requires that any complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Each allegation must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). Try as it might, this Court cannot make sense of Gould's Motion in which he sets forth no real authority for his position other than his own conclusions drawn from certain portions of the Illinois Constitution, and otherwise fails to include any semblance of a cognizable legal claim.[5] Gould's "Motion on the Question of Respondent's Necessity for Separation of Powers" is accordingly DENIED.

## CONCLUSION

For the reasons set forth above, the Court adopts the Report & Recommendation [#19] of the Magistrate Judge in its entirety. Defendant Schneider's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [#12] is GRANTED, and Plaintiff Gould's Complaint is DISMISSED WITH PREJUDICE. Justice Kilbride's and Scodro's Motion to Quash [#10] is DENIED AS MOOT. This matter is now TERMINATED.

ENTERED this 28th day of February, 2011.

                                                         s/ Michael M. Mihm
                                                         Michael M. Mihm
                                                         United States District Judge

---

[5] The Court parenthetically notes that Gould's Motion discusses "Respondents" though there is only one named Defendant.